FILED
James J. Waldron, Clerk

APR 07 2016

U.S. Bankruptcy Court Newark NJ
BY: _____ Deputy

**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| IN RE: | CHAPTER 7 |
| Jesal Patwari, | |
| Debtor. | Case No.: 08-26178 (JKS) |
| | **OPINION** |
| Doctor's Associates Inc., | |
| Plaintiff, | Adv. Pro. No.: 09-1022 (Formerly U.S. District Court Case No.: 08-3363) |
| v. | |
| Jesal Desai a/k/a Jesal Patwari, Shapat, Inc., Shapat II, LLC, Shapat III, LLC and Patwari, LLC, | |
| Defendants. | |
| Jesal Desai a/k/a Jesal Patwari, Shapat, Inc., Shapat II, LLC, Shapat III, LLC and Patwari, LLC, | |
| Third-Party Plaintiffs, | |
| v. | |
| Subway Real Estate Corp., Yogesh Dave and Subway Development Co., | |
| Third-Party Defendants. | |

**APPEARANCES:**

Forrest Scott Turkish, Esq.
Law Office of Scott Turkish
595 Broadway
Bayonne, NJ 07002
*Attorney for Doctor's Associates, Inc.
and Subway Real Estate Corp*

Michael S. Waters, Esq.
McElroy, Deutsch, Mulvaney & Carpenter, LLP
Three Gateway Center
100 Mulberry Street
Newark, NJ 07102
*Attorney for Eric R. Perkins, Esq. Chapter 7 Trustee, and
Special Counsel to Catherine Youngman, Esq., Chapter 7
Trustee for Shapat, Inc., Patwari, LLC, Shapat II, LLC and
Shapat III, LLC*

David M. Kohane, Esq.
Ryan T. Jareck, Esq.
Cole, Schotz, Meisel,
Forman and Leonard, PA
Court Plaza North
25 Main Street, PO Box 800
Hackensack, NJ 07602
*Attorneys for Yogesh Dave and
Subway Development Co.*

## THE HONORABLE JOHN K. SHERWOOD, BANKRUPTCY JUDGE

This matter is before the Court upon the motion of Doctor's Associates, Inc. ("DAI") and Subway Real Estate Corporation ("SREC") for the following relief against chapter 7 debtor Jesal Patwari, formerly Jesal Desai ("Desai-Patwari" or the "Debtor")[1]:

1. An order vacating the preliminary injunction entered by the Superior Court of New Jersey, Chancery Division, on February 26, 2008.

2. Judgment dismissing all claims, counterclaims and third-party claims of Desai-Patwari and Shapat, Inc., Shapat II, LLC, Shapat III, LLC and Patwari LLC (the "Operating Entities") pursuant to Federal Rule of Civil Procedure 12(b)(6).

3. An order entering judgment confirming the four arbitration awards entered on September 26, 2007.

4. Treble damages and attorney's fees for violation of the Lanham Act pursuant to 15 U.S.C. § 1117.

5. An order for a reverse piercing of the corporate veil to make the Operating Entities liable for any relief obtained against Desai-Patwari.

Also before the court is the motion of Yogesh Dave ("Dave") and Subway Development Co. to dismiss the claims against them brought by Desai-Patwari and the Operating Entities. Eric R. Perkins, chapter 7 trustee for the estate of Desai-Patwari, and Catherine Youngman, chapter 7 trustee for the Operating Entities' estates (collectively, the "Trustees"), oppose the motions.[2]

For the reasons set forth below, the Court will grant in part the motion of DAI and SREC and will grant the motion to dismiss of Dave and Subway Development Co.

---

[1] At some point prior to when the bankruptcy case was filed, Jesal Desai became Jesal Patwari. In the hope of lessening confusion, references to her in this opinion will be to "Desai-Patwari".

[2] The motions were argued before the Honorable Novalyn L. Winfield on March 8, 2012, who retired in June 2015. Much of the work on this Opinion was done by Judge Winfield post-retirement and the Court thanks her for her dedication.

3

## JURISDICTION

The Court has jurisdiction over the motions pursuant to 28 U.S.C. §§ 1334(b), 157(a), and the Standing Order of Reference from the United States District Court for the District of New Jersey. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (C). Venue is proper under 28 U.S.C. §§ 1408 and 1409(a).

Initially, the Court did not believe it had the ability to enter a final judgment on the within matter in light of the United States Supreme Court's holding in *Stern v. Marshall*, 131 S. Ct. 2594, 180 L. Ed. 2d 475 (2011) limiting bankruptcy judges to rendering proposed findings of fact and conclusions of law where they have subject matter jurisdiction but lack the Constitutional authority to enter a final judgment in a statutory core matter. However, the United States Supreme Court recently issued an opinion in *Wellness International Network, Ltd. v. Sharif* holding that "Article III is not violated when the parties knowingly and voluntarily consent to adjudication by a bankruptcy judge." 135 S. Ct. 1932, 191 L. Ed. 2d 911 (2015). Here, the parties expressly consented to this Court's jurisdiction. Accordingly, what follows is the Court's final adjudication of this matter.

## FACTUAL AND PROCEDURAL BACKGROUND

DAI is the trademark holder of the Subway® name and the franchisor of the sandwich shops bearing the name Subway®. DAI entered into four separate franchise agreements with Desai-Patwari for the operation of Subway® sandwich shops in Northern New Jersey (the "Franchise Agreements"). (Certification of Tricia Lee ("Lee Cert."), Exs. A-D, ECF No. 68). Although each Franchise Agreement was executed solely by Desai-Patwari between 2002 and

4

2006, she formed the Operating Entities to operate the four sandwich shops, as permitted by the agreements.[3] Each Franchise Agreement contains an arbitration clause at paragraph 10 that provides all disputes between DAI and Desai-Patwari are subject to arbitration and that any arbitration award may be confirmed by a judgment in any court of competent jurisdiction. (*See e.g., id.*, Ex. B at ¶ 10). The only claims excluded from the arbitration clauses are landlord-tenant actions commenced by SREC and claims by DAI for injunctive relief related to its trademarks. (*Id.*, Ex. B at ¶¶ 10(b), (d)).[4]

The arbitration clauses further preclude Desai-Patwari from suing any of DAI's agents (here, Dave and Subway Development Co.) for disputes related to the Franchise Agreements:

> You may only seek damages or any remedy under law or equity for any arbitratable claim against us or our successors or assigns. You agree that our Affiliates, shareholders, directors, officers, employees, agents and representatives, and their affiliates, shall not be liable nor named as a party in any arbitration or litigation proceeding commenced by you where the claim arises out of or relates to this Agreement. You further agree that the foregoing parties are intended beneficiaries of the arbitration clause; and that all claims against them that arise out of or relate to this Agreement must be resolved with us through arbitration. If you name a party in any arbitration or litigation proceeding in violation of this Subparagraph 10c, you will reimburse us for the reasonable costs incurred, including but not limited to, arbitration fees, court costs, lawyers' fees, management preparation time, witness fees, and travel expenses incurred by us or the party.

(*Id.*, Ex. B at ¶ 10(c)).

In connection with each Franchise Agreement, Desai-Patwari also executed a franchise disclosure questionnaire. (*See e.g., id.*, Ex. R). The answers on all four questionnaires state that Desai-Patwari "consulted with attorneys, and/or professional advisors, as well as existing

---

[3] These sandwich shops were located at: 44 Claremont Ave., Montclair, New Jersey; 6901 Bergenline Ave., Guttenberg, New Jersey; 595 Bloomfield Ave., Bloomfield, New Jersey; and 121 Bloomfield Ave., Bloomfield, New Jersey.
[4] SREC is the leasing affiliate of DAI. SREC entered into a master lease with four separate non-party master landlords, and in turn subleased these premises to Desai-Patwari. (Lee Cert. ¶ 15, Ex. E).

franchisees, and fully read and understood the Franchise Agreement and offering circular, understood the risks, and understood that any disputes would ultimately be resolved through arbitration in Connecticut." (*Id.* ¶ 8).

Desai-Patwari also executed separate subleases for each store with SREC. Each sublease provides that its sole purpose is for Desai-Patwari to operate a Subway® sandwich store pursuant the Franchise Agreement. Paragraph 6 provides:

> (6) If at any time during the term of this Sublease, [Desai-Patwari] shall default in the performance of any of the terms of the Master Lease of the Franchise Agreement, [SREC] may terminate this Sublease on ten (10) days written notice to [Desai-Patwari], and upon such termination, [Desai-Patwari] shall quit and surrender the leased premises to [SREC] but [Desai-Patwari] shall remain liable for the balance of the rent due as provided in this Sublease. The parties agree that trial by jury shall be waived in the event of litigation.

(*Id.*, Ex. E at ¶ 6).

Around July 2007, DAI alleged various defaults under the Franchise Agreements, including non-payment of rent, with respect to the three Subway® locations in Montclair and Bloomfield. In August 2007, DAI sent notices of default and brought four landlord-tenant actions against Desai-Patwari. (*Id.*, Ex M).[5] Further, DAI commenced arbitration proceedings against Desai-Patwari and each sandwich store before the American Dispute Resolution Center in Connecticut. (*Id.* ¶ 10). Ultimately, on September 6, 2007, four arbitration awards (one for each store location) were entered against Desai-Patwari, providing for monetary and injunctive relief. (*Id.*, Ex. O). Among the relief granted was: (1) each Franchise Agreement was terminated and Desai-Patwari was directed to disidentify the stores and cease use of all

---

[5] *See SREC v. Jesal Desai*, Dkt. No. ESX-LT-28399-07; *SREC v. Jesal Desai*, Dkt. No.: ESX-LT-28400-07; *SREC v. Jesal Desai*, Dkt. No.: ESX-LT-26840-07; *SREC v. Jesal Desai*, Dkt. No.: HUD-LT-5770-08. (Lee Cert., Exs. F, I, J and K).

trademarks and tradenames; and (2) Desai-Patwari was directed to pay to DAI under-reported fees, royalties, advertising fees and certain costs of the arbitration. (*Id.*).

From the history recited in the arbitration awards it is evident that Desai-Patwari was afforded ample opportunity to appear and defend against the claims of DAI. Each arbitration award recites the following:

> On June 27th, 2007 the Respondent requested an oral hearing in the matter and the Arbitrator granted the request for a hearing to take place on the 13th of July 2007.
>
> On July 11th newly appearing counsel for the Respondent requested a continuance of the hearing date. Over objections of the Claimant, the hearing was rescheduled by the Arbitrator to July 31st, 2007.
>
> On July 31st 2007 the Parties by agreement continued the hearing date to September 5th 2007 and the Arbitrator ordered that no further continuances would be granted.
>
> On the hearing day the Respondent and her counsel failed to appear to defend, cross examine or offer any proofs to contend against the claims and proofs of the Claimant.
>
> The Arbitrator proceeded with the hearing after due notice was sent to the Respondent and no further objection was heard.

(*Id.*, Ex. O). It appears that all four awards were sent to Desai-Patwari and her counsel by first class mail and certified mail on September 6, 2007. (*Id.*).

In early October 2007, Desai-Patwari and the Operating Entities filed a one-count verified complaint against DAI and SREC in the Superior Court of New Jersey, Chancery Division (the "Chancery Action") seeking "temporary restraints and preliminary injunctive relief to enjoin enforcement of an arbitration award and termination of the four franchised subway stores." (Compl., ECF No. 78). The complaint described the ultimate relief requested as follows:

> (1) Reforming the contract between the plaintiff and defendant by voiding the arbitration choice of law, limitation of

7

> damages and waiver of jury trial provisions of the plaintiff's and defendant's contract as aforesaid;
>
> (2) Finding a violation of the Franchise Act, N.J.S.A. 56:10-1 *et. seq.* and for costs and reasonable attorney fees as provided in the act;
>
> (3) Staying the defendant's, Subway Real Estate Corporation's actions in terminating the plaintiff's subleases.

(*Id.* ¶ 20). Desai-Patwari also moved by Order to Show Cause for a preliminary injunction.

On February 26, 2008, Judge Kenneth Levy issued a preliminary injunction enjoining enforcement of the arbitration awards "to preserve the status quo" between the parties and preventing the use of the awards in any other proceedings. (*See* Order Entering Preliminary Injunction, ECF No. 78-5). Though not well-pled in Desai-Patwari's complaint, it does appear that the issue of whether the arbitration clauses were unenforceable because they were unconscionable may have been put before the State Court.[6] As part of his oral decision to impose a preliminary injunction Judge Levy stated:

> The Court here must determine whether to enjoin further proceedings by defendant to enforce the arbitrator's four arbitration awards against the defendant pending the outcome of this litigation. This inquiry requires the Court to examine whether as a matter of general State contract law the arbitration provisions in the four franchise agreements are unconscionable and therefore unenforceable.

(Certification of Jesal Desai, Ex. C, ECF No. 72-6).

Also in February 2008, the four landlord-tenant actions were consolidated with the Chancery Action. (Lee Cert., Ex. L). In August 2008, DAI removed the Chancery Action to the United States District Court for the District of New Jersey. Approximately one month earlier, DAI filed a nine-count verified complaint in the district court seeking various relief including a

---

[6] Paragraph 20 of the complaint states that Desai-Patwari "objected to the arbitration process based upon its revenue and other reasons." (Compl., ECF No. 78-3).

preliminary injunction preventing Desai-Patwari from continuing to operate the Subway® shops and claims for trademark infringement in violation of the Lanham Act, 15 U.S.C.§ 1501 *et seq.* Judge Martini issued a preliminary injunction on August 12, 2008, finding that DAI demonstrated a strong likelihood that it properly terminated the Franchise Agreements and that Desai-Patwari's continued use of the Subway® trademarks was unauthorized, stating:

> Here, Plaintiff terminated any possible source of Defendants' authorization to use Plaintiff's marks when Plaintiff terminated the last of Defendants' franchise agreements. Defendants make no real argument or present any evidence that Plaintiff did not have proper grounds to terminate these agreements or that Plaintiff failed to follow the proper procedures for termination.

(Letter Opinion at 3, ECF No. 58).

Also in August 2008, Desai-Patwari and the Operating Entities filed an answer and affirmative defenses against DAI, and a counterclaim and third party complaint against SREC, Dave and Subway Development Co.[7] (*See* Answer, ECF No. 64). The counterclaim contained ten counts and asserted, *inter alia*, that the Franchise Agreements were contracts of adhesion, that DAI terminated the Franchise Agreements without good cause, that the Franchise Agreements were terminated in violation of the contract law of the State of New Jersey and that the Franchise Agreements were unconscionable.

The third party complaint contains fourteen claims, including the following: (1) that the subleases, which provide for termination upon defaults under the Franchise Agreements are contracts of adhesion; (2) the subleases, as ancillary agreements to the Franchise Agreements also violate the New Jersey Franchise Practices Act, N.J.S.A. 56:10; (3) SREC was a sham landlord in connection with the subleases and Franchise Agreements; (4) DAI, SREC, Dave and

---

[7] Dave states that through his operating company, Subway Development Co., he is an independent contractor/agent of DAI pursuant to a Development Agent Agreement. Dave further states that he develops and services DAI's restaurants in select counties in northern New Jersey. (Mot. to Dismiss at 1, ECF No. 83-2).

Subway Development Co. acted in bad faith in terminating the subleases and Franchise Agreements; (5) interference with prospective economic advantage concerning Desai-Patwari's operation of the Subway® stores; and (6) fraudulent misrepresentations by Dave that allegedly induced Desai-Patwari to enter into the Franchise Agreements. (*See id.*).

## LEGAL ANALYSIS

The arbitration clause in each of the Franchise Agreements provides that arbitration governed by the Federal Arbitration Act (the "FAA"), 9 U.S.C. §§ 1-16, will be employed to address disputes between the parties. The only claims excluded from the scope of the arbitration clause are landlord-tenant actions commenced by SREC and claims by DAI for injunctive relief related to its trademarks. (*See* Franchise Agreement ¶¶ 10(e), (n)).

In the Chancery Action, Desai-Patwari appears to have largely argued that the arbitration awards violated the New Jersey Franchise Practices Act. Counsel for the Trustees now argues that the arbitration clause is unconscionable and therefore unenforceable. As will be discussed, the Court finds neither argument persuasive. Further, the Court finds that the claim of unconscionability, having been raised well beyond the three-month time limitation provided in 9 U.S.C. § 10 for seeking relief from an arbitration award, is untimely and cannot be considered. Accordingly, the injunction issued in the Chancery Action must be vacated and Desai-Patwari's claims against DAI, SREC, Dave and Subway Development Co. must be dismissed.

Section 2 of the FAA provides that a written provision for arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds as exist in law or equity." 9 U.S.C. § 2. The FAA was enacted "to reverse the long-standing judicial hostility to arbitration agreements that had existed at English common law and had been adapted by American courts, and to place

arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). The Supreme Court has stated that "[i]n enacting § 2 of the Federal Act, Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984). Since the FAA precludes resort to state courts for matters the parties agreed to arbitrate, Desai-Patwari's reliance on the New Jersey Franchise Practices Act and the injunction issued in the Chancery Action is misplaced and unavailing. Because the New Jersey Franchise Practices Act is preempted, the preliminary injunction must be vacated.

However, the non-applicability of the Franchise Practices Act does not mean that a court may not consider issues of fraud or coercion. Section 2 of the FAA authorizes a court to invalidate an arbitration clause where the clause itself could be invalidated under contract law, such as for fraud, coercion, or unconscionability. *See Prima Paint Corp. v. Flood & Conklin Mfg., Co.*, 388 U.S. 395, 400 (1967). To be unenforceable by virtue of unconscionability, the arbitration provision must be both procedurally and substantively unconscionable. *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 181 (3d Cir. 1999).

The Trustees principally rely on *Alexander v. Anthony Crane International L.P.*, 341 F.3d 256 (3d Cir. 2003), for their contention that the arbitration provisions are unenforceable because they are unconscionable. In *Alexander*, the Third Circuit found procedural unconscionability because the employment contract was presented to the plaintiffs as a "take-it-or-leave-it" agreement and the plaintiffs had no real choice but to accept the terms. *Id.* at 266. The court observed that Anthony Crane International, L.P., a multinational corporation, "clearly possessed more bargaining power than two long time equipment operators with limited educational

11

backgrounds and at best, very narrow options for other employment. *Id.*[8] The court further found that the arbitration agreement was substantively unconscionable on four grounds. First, it found that prohibiting an employee from bringing a claim unless the claim was brought within 30 days of the last date of employment was not a sufficient amount of time for an employee to file a well-supported claim. *Id.* at 267. Second, such a time frame prevented an employee from invoking the continuing violation and equitable tolling doctrines. *Id.* at 266-67. Third, Anthony Crane was not similarly required to provide "detailed and written notice to an employee of any of its claims within a strictly enforced thirty-day time period." *Id.* at 267. Finally, the court found that the arbitration agreement substantially limited the relief available to the plaintiffs by narrowly defining available damages and preventing plaintiffs from the possibility of recovering punitive damages or attorney's fees. *Id.*

The Trustees argue that the matter at hand is similar to *Alexander* because the Debtor claimed in the Chancery Action that she was advised that she had to sign the franchise agreements "as is" in order to be a franchisee. The Trustees also rely on Desai-Patwaris' contention that the franchise agreements required her to resolve any claims against "affiliates, shareholders, directors, officers, employees, agents and representatives and their affiliates" solely in an arbitration proceeding with DAI. He argues that, like the plaintiffs in *Alexander*, Desai-Patwari was deprived of a meaningful opportunity to have her claims heard. Finally, the Trustees assert that the provision is unconscionable because it provides that if any litigation is commenced in violation of the arbitration provision, the franchisee must reimburse DAI for its reasonably incurred costs.

---

[8] Significantly, the court also noted that Alexander had the equivalent of a seventh grade education and his co-plaintiff had merely achieved the equivalent of a fifth grade education. 341 F.3d at 259.

The facts of this case are inapposite to those presented in *Alexander*. First, Desai-Patwari is a college graduate who had experience operating a Ramada Hotel franchise. Thus, she is neither undereducated nor unsophisticated as to business matters. Second, there are a number of food franchises similar to Subway, and Desai-Patwari, unlike the *Alexander* plaintiffs, had other opportunities from which to choose.[9] Third, although Desai-Patwari claims that the Subway franchise agreement was presented to her on an "as is" basis, she provides no factual support for this contention and it is at odds with her acknowledgement that she could have had legal representation prior to entering into the franchise agreements. Also, Desai-Patwari entered into four franchise agreements between 2002 and 2006 and thus had multiple opportunities to have legal assistance with the terms of the franchise agreements. Thus, the Trustees' claim that the arbitration clauses in the Franchise Agreements are procedurally unconscionable cannot be sustained.

Equally unfounded is the Trustees' claim that the limitation restricting the franchisee to the arbitration forum for claims against agents and affiliates (e.g., Dave, SREC and Subway Development Co.) is unconscionable. The provision merely requires that any claims arising out of the conduct of DAI's agents and affiliates be raised in the arbitration with DAI and imposes costs only if the franchisee proceeds in a different forum. A single forum for resolution of all franchise matters is certainly in keeping with the goals of the FAA. Further, while the arbitration clause imposes costs on the franchisee for pursuing claims against agents and affiliates in a non-arbitration forum, no similar costs are imposed for the franchisee to pursue such claims in the arbitration forum.

---

[9] It is worth noting that at the time Desai-Patwari became a Subway franchisor her husband operated a Nathan's franchise. (*See* Br. in Reply to Trustee's Opp'n at 8, ECF No. 91-1).

In the case at hand, the arbitration was held with the American Dispute Resolution Center in Bridgeport, Connecticut, a site readily accessible by car and public transportation. Thus, all parties (including agents and affiliates of DAI) could have easily presented testimony and exhibits in the course of an arbitration proceeding among Desai-Patwari, the Operating Entities, and DAI. *See Doctor's Assoc., Inc. v. Hamilton*, 150 F.3d 157, 163-64 (2d Cir. 1998) (noting that Connecticut arbitration location and sharing of costs was not an unconscionable provisions); *see also Doctor's Assoc., Inc. v. Stuart*, 85 F.3d 975, 980-81 (2d Cir. 1996) (arbitration clause not unconscionable because it clearly explained the responsibility regarding the costs of arbitration and Connecticut as the place for the arbitration hearing).

Also undermining the Debtor's contention that the Bridgeport, Connecticut location for the arbitration is an unconscionable provision is the fact that Desai-Patwari did in fact appear in the arbitration proceeding. On June 27, 2007, Desai-Patwari appeared *pro se* to request an adjournment, which was granted. Subsequently, her counsel, Susheela Verma, Esq., appeared to request a further adjournment, which was also granted and the matter was carried to July 31, 2007. A further adjournment was requested and, over the objection of DAI, the matter was carried to September 5, 2007, a date chosen by Ms. Verma. Subsequently, one day before the scheduled hearing, Ms. Verma sent a letter objecting to the arbitration as being held because she claimed that Desai-Patwari:

> never agreed to submit to the arbitration hearing that was commenced by the Doctor's Associates. This matter was scheduled for September 5, 2007 due to DAI's commitment to work on a settlement agreement. The Doctor's Associates however never intended to engage in such negotiations and in bad faith proceeded to terminate the process and instead issued termination notices to Ms. Desai. We do dispute the arbitration process and the kind of actions that have been taken by Subway since the last telephone conference. All of this has left us with no choice but [to] seek judicial assistance. As part of this process, we

> will ask [the] court to rule on Subway's right to submit this matter to arbitration.

(Reply Certification of Tricia Lee, Ex. A, ECF No. 91-4). On September 5, 2007, the arbitrator advised all parties that the arbitration would go forward. (*Id.*). As a result of the arbitration, the arbitrator rendered four separate arbitration awards against Desai-Patwari on September 6, 2007. (Lee Cert., Ex. O).

In the September 4, 2007 letter objecting to the arbitration going forward, Desai-Patwari did not clearly specify the grounds for the objection. Nor, prior to conclusion of the arbitration proceeding, did Desai-Patwari seek a hearing in the arbitration proceeding or in any other court as to whether the arbitration provision in the Franchise Agreement was unconscionable or otherwise legally infirm.

Similarly, some months later, when Desai-Patwari and her counsel brought suit in the Chancery Action and sought a preliminary injunction, the argument advanced was that the arbitration provisions were not enforceable because the Franchise Agreements themselves were unconscionable and contracts of adhesion. (*See* Decision, ECF No. 4-6). There does not appear to have been a claim that the arbitration provisions themselves were unconscionable and therefore unenforceable.

Although a preliminary injunction was granted, halting enforcement of the arbitrator's decision terminating the Subway® franchises, it appears to this Court that such injunctive relief is contrary to settled United States Supreme Court precedent and should be vacated. In *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 447 (2006), certain borrowers sued Buckeye in Florida state court alleging that Buckeye made usurious loans in violation of various Florida statutes. Buckeye countered by seeking to compel arbitration as provided for in its Deferred Deposit and Disclosure Agreement. Ultimately, the Florida Supreme Court held that enforcing

15

an arbitration agreement in a contract challenged as unlawful violated various Florida state statutes.

Relying on *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967) and *Southland Corp v. Keating*, 465 U.S. 1 (1984), the Supreme Court disagreed with the Florida Supreme Court's analysis:

> *Prima Paint* and *Southland* answer the question presented here by establishing three propositions. First, as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract. Second, unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance. Third, this arbitration law applies in state as well as federal courts. The parties have not requested, and we do not undertake, reconsideration of those holdings. Applying them to this case, we conclude that because respondents challenge the Agreement, but not specifically its arbitration provisions, those provisions are enforceable apart from the remainder of the contract. The challenge should therefore be considered by an arbitrator, not a court.

388 U.S. at 454-46. Accordingly, Desai-Patwari and her counsel were seeking relief in the wrong forum and the preliminary injunction must be vacated.

Finally, it must be noted that Desai-Patwari failed to timely move to vacate the arbitration awards under 9 U.S.C. § 10. DAI points out that Desai-Patwari only claimed that the awards should be vacated in a pleading captioned "Answer, Affirmative Defenses, Counterclaim and Third Party Claim" filed approximately ten months after the arbitration awards were issued in response to DAI's motion in the district court to confirm the awards. This belated request to vacate the arbitration awards can only be viewed as woefully out of time.

It is well recognized that a motion to vacate an arbitration award may not be raised as a defense to a motion to confirm the award after the three month limitation period in 9 U.S.C. § 12

16

has run.[10] *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 175 (2d Cir. 1984). In *Pickholz*, the Second Circuit examined the language of section 12 and the limitations placed on vacating, modifying or correcting an award found in sections 10 and 11:

> No exception to this three month limitations period is mentioned in the statute. Thus, under its terms, a party may not raise a motion to vacate, modify, or correct an arbitration award after the three month period has run, even when raised as a defense to a motion to confirm.

750 F.2d at 175 (internal citations omitted). This construction and application of section 12 of the FAA is shared by courts in the Third Circuit. *See Service Employees Int'l Union Local No. 36, AFL-CIO v. Office Ctr. Servs., Inc.*, 670 F.2d 404 (3d Cir. 1983).[11] Because the Trustees' assertion that the arbitration provision itself is unconscionable is untimely, it cannot be considered and the arbitration awards must be confirmed.

## CONCLUSION

Based on the foregoing, the motion of DAI and SREC is granted in part. An Order will be entered: (1) vacating the preliminary injunction entered in the Chancery Action on February 26, 2008; (2) dismissing all claims, counterclaims and third-party claims of Desai-Patwari and the Operating Entities pursuant to Federal Rule of Civil Procedure 12(b)(6); and (3) confirming the four arbitration awards entered on September 26, 2007 and the damages included therein.

---

[10] Section 12 provides, in relevant part:

> Notice of a motion to vacate, modify or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered.

9 U.S.C. § 12.

[11] *See also Jeereddi A. Prasad, M.D., Inc., v. Investors Assocs., Inc.*, 82 F. Supp. 2d 365, 367-68 (D.N.J. 2000) (the FAA "does not permit the assertion of challenges to an arbitration award in opposition to a motion to confirm the award after the three-month limitations period has expired.").

17

Counsel for DAI shall submit an updated calculation of damages on or before May 6, 2016. The parties are directed to meet and confer regarding the claims of DAI and SREC for treble damages and attorney's fees stemming from the Debtor's alleged Lanham Act violations and for reverse piercing of the corporate veil. The parties have been directed to submit a report and supplemental arguments to the Court on these issues on or before May 6, 2016.

The motion to dismiss of Dave and Subway Development Co. is granted.

Dated: April 7, 2016

/s/ [signature]

United States Bankruptcy Judge